UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee, | : |
| | : Case No. 08 CV 1297 |
| Interpleader Plaintiff, | : (GEL) (HBP) |
| | : |
| - against - | : |
| | : |
| CALYON, MAGNETAR CONSTELLATION MASTER | : |
| FUND, LTD., CEDE & CO., as Holder of certain Global | : |
| Notes and Preference Shares and nominee name of the | : |
| Depositary Trust Company, and DOES 1 through 100, owners | : |
| of beneficial interests in the Global Notes and/or Preference | : |
| Shares, | : |
| | : |
| Interpleader Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**ANSWER OF MAGNETAR CONSTELLATION MASTER
FUND, LTD TO INTERPLEADER COMPLAINT AND
<u>AFFIRMATIVE CLAIM TO INTERPLEADER FUNDS</u>**

Interpleader Defendant MAGNETAR CONSTELLATION MASTER FUND, LTD, ("Magnetar"), through its undersigned attorneys, Otterbourg, Steindler, Houston & Rosen, P.C., as and for its Answer to the Interpleader Complaint ("Complaint") filed by Interpleader Plaintiff WELLS FARGO BANK, N.A., as Trustee (the "Trustee") of the Indenture dated December 7, 2006, by and among Wells Fargo Bank., N.A., as Trustee, Orion 2006-2, Ltd. as Issuer, and Orion 2006-2, LLC, as Co-Issuer (the "Indenture"), respectfully alleges as follows:

1.       Admits the allegations contained in Paragraph 1 of the Complaint, except denies knowledge or information sufficient to form a belief as to the allegation that the Trustee cannot determine, without hazard to itself, how to proceed and denies that an Event of Default was properly declared.

2.       Admits the allegations contained in Paragraph 2 of the Complaint.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 4 of the Complaint and, upon information and belief, admits the allegations contained in the second sentence of Paragraph 4 of the Complaint.

5. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 5 of the Complaint and, upon information and belief, admits the allegations contained in the second sentence of Paragraph 5 of the Complaint.

6. Admits the allegations contained in Paragraph 6 of the Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9. Admits the allegations contained in Paragraph 9 of the Complaint.

10. Denies the allegations contained in Paragraph 10 of the Complaint, except admits that Magnetar consents to the jurisdiction of this Court solely to adjudicate the conflicting claims of the defendants in this action to the amounts to be distributed under the Indenture.

11. Admits the allegations contained in Paragraph 11 of the Complaint and respectfully refers the Court to the Indenture for the complete terms thereof.

12. Denies the allegations contained in Paragraph 12 of the Complaint and respectfully refers the Court to the Indenture for the complete terms thereof, except denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 12.

13. Admits the allegations contained in Paragraph 13 of the Complaint.

14. Denies the allegations contained in Paragraph 14 of the Complaint, except admits that by notice dated November 7, 2007 (the "November 7 Notice"), the Trustee purported to notify the recipients that, among other things, an Event of Default had occurred under Section 5.1(h) of the Indenture and that, pursuant to Article 5 of the Indenture, Holders of Notes may be entitled to direct Wells Fargo to take particular actions with respect to the Collateral Debt Securities and the Notes during the occurrence and continuance of the Event of Default, and affirmatively avers that no such Event of Default occurred as of November 7, 2007.

15. Admits the allegations contained in Paragraph 15 of the Complaint, except denies that an Event of Default had occurred as set forth in the November 7 Notice.

16. Denies the allegations contained in Paragraph 16 of the Complaint, except admits that Magnetar Financial LLC, the investment advisor for Magnetar, informed the Trustee on behalf of Magnetar, that it objected to the Trustee's determination that an Event of Default had occurred under Section 5.1(h) of the Indenture as of November 7, 2007, as such determination is contrary to the express terms of the Indenture, and further admits that Magnetar owns 46,761 Preference Shares.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint, except admits that by notice dated December 6, 2007 (the "December 6 Notice") to the Trustee, Calyon, among other things,

allegedly pursuant to its asserted rights under Section 5.2 of the Indenture, purported to declare the principal of and accrued and unpaid interest on all of the Notes (including the commitment fee payable to Calyon on the Class A-1A Notes) to be immediately due and payable, and affirmatively avers that Calyon's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

18. Denies the allegations contained in Paragraph 18 of the Complaint, except admits that in the December 6 Notice, Calyon purported to instruct the Trustee not to distribute any Interest Proceeds and Principal Proceeds to any Subordinate Interests, as that term is defined in Section 13.1(b) of the Indenture, until all such Interest Proceeds and Principal Proceeds were first paid to amounts allegedly due Calyon as Holder of Class A-1A Notes, and affirmatively avers that Calyon's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

19. Denies the allegations contained in Paragraph 19 of the Complaint, except admits that in the December 6 Notice, allegedly in accordance with Section 13.1(b), Calyon purported to instruct the Trustee, among other things, that before any distribution to Subordinate Interests were made, all Interest Proceeds and Principal Proceeds must first be directed to the payment of the amounts described in Section 11.1(i)(A) through the first sub-clause of (F) of the Indenture, and affirmatively avers that Calyon's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

20. Denies the allegations contained in Paragraph 20 of the Complaint, except admits that in the December 6 Notice, allegedly in accordance with Section 13.1(b), Calyon purported to

instruct the Trustee, among other things, that after payment of the amounts set forth in Section 11.1(A) through the first subclause of (F) of the Indenture, all remaining Interest Proceeds and Principal Proceeds were to be applied to the payment of principal of Class A-1A Notes until the funded Aggregate Outstanding Amount of the Class A-1A Notes had been reduced to zero, and then, were to be deposited into the Reserve Account established under the Indenture until the Remaining Unfunded Class A-1A Commitment Amount had been reduced to zero, which deposit would result in a reduction of certain of Calyon's obligations to make advances as a Holder of Class A-1-A Notes, and affirmatively avers that Calyon's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

21. Denies the allegations contained in Paragraph 21 of the Complaint, except admits that in the December 6 Notice, Calyon purported to instruct the Trustee that after payment of the items described in Paragraphs 19 and 20 of the Complaint, and the deposit into the Reserve Account as described in Paragraph 20 of the Complaint, the Trustee should apply Interest Proceeds and Principal Proceeds to pay interest and principal on all Subordinate Interests, purportedly as contemplated under Section 13.1(b) of the Indenture, and affirmatively avers that Calyon's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, except avers that Calyon's interpretation of Sections 11.1 and 13.1 of the Indenture is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24. Denies the allegations contained in Paragraph 24 of the Complaint, except admits that a dispute exists among the defendants as to the proper distribution of all Interest Proceeds and Principal Proceeds.

25. Denies the allegations contained in Paragraph 25 of the Complaint, except admits that there is a dispute among the defendants concerning (a) whether an Event of Default under Section 5.1(h) of the Indenture occurred as of November 7, 2007 and (b) the meaning of certain provisions of the Indenture, including, without limitation, Sections 1.1(a), 5.1(h), 11.1(a) and 13.1.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, except admits the allegations contained in the second sentence of Paragraph 26 of the Complaint.

27. Admits the allegations contained in Paragraph 27 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third sentence of Paragraph 27 of the Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, except, upon information and belief, admits that the Trustee has filed a bond with this Court in the amount of $9,761,422.56.

29. Denies the allegations contained in Paragraph 29 of the Complaint, except admits that a dispute over entitlement to Interest Proceeds and Principal Proceeds is likely to recur on succeeding Distribution Dates.

30. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the allegations contained in Paragraph 30 of the Complaint.

31.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the allegations contained in Paragraph 31 of the Complaint.

### AFFIRMATIVE CLAIM TO MAGNETAR'S SHARE OF THE INTERPLEADER FUNDS AND FUTURE DISTRIBUTIONS

By way of affirmative claim to its share of the funds held by the Trustee representing undistributed collections of Interest Proceeds and Principal Proceeds (the "Interpleader Funds") and funds that may be distributed on any subsequent Distribution Date in accordance with the Indenture, and in further response to the Complaint in this Action, Magnetar alleges as follows:

32.     Magnetar repeats and realleges each and every admission and denial hereinabove set forth in paragraphs "1" through "31" hereof as if each of these admissions and denials were more fully set forth at length hereat.

### PARTIES

33.     Magnetar is the beneficial owner of Preference Shares issued by the Issuer in accordance with, *inter alia*, the Preference Share Paying Agency Agreement, dated December 7, 2006, among Issuer, the Preference Share Registrar and Wells Fargo Bank, National Association, as Preference Share Paying Agent. Distribution on the Preference Shares is payable in accordance with the Indenture.

34.     Upon information and belief, Calyon is the Credit Default Swap Counterparty and Holder of a Majority of the Controlling Class of Class A-1A Notes issued under the Indenture. Upon information and belief, Calyon and the Issuer entered into a Class A-1A Note Purchase Agreement, dated December 7, 2006 (the "A-1A Agreement"), pursuant to which the Class A-1A Definitive Note (the "A-1A Note(s)") in an amount up to $900,000,000 (the "A-1A Commitment Amount") was issued to Calyon. Upon information and belief, no borrowings have

occurred pursuant to the A-1A Agreement and there is no funded outstanding amount due Calyon.

36. Upon information and belief, Calyon or one or more of its affiliates, were the initial purchaser of the Notes and the Preference Shares under the Indenture and were involved in the preparation of the Indenture, related documents and the Offering Memorandum dated December 6, 2006.

36. Pursuant to the Indenture and the A-1A Agreement, under certain circumstances, Calyon may be required to fund payments to be made by the Issuer under the Indenture and related agreements. Calyon is not required to make any payment to the Issuer that would exceed the A-1A Commitment Amount. Deposits into a reserve account established by and held in the name of the Trustee (the "Reserve Account") reduce the Class A-1A Commitment Amount on a dollar for dollar basis.

**RELEVANT BACKGROUND**

37. Under the terms of the Indenture and certain related agreements, in or around December 7, 2006, the Co-Issuers issued twelve classes of secured notes (the "Notes") and the Preference Shares.

38. To the extent of available funds, and in accordance with the priority scheme set forth in the Indenture, interest and principal proceeds collected by the Trustee from certain collateral (the "Interest Proceeds" and "Principal Proceeds", respectively) are paid by the Trustee, on behalf of the Issuer, in accordance with the terms of the Indenture, on a date each month (each, a "Distribution Date") to, among others, (i) the Credit Default Swap Counterparty, (ii) the holders of the Notes (the "Noteholders"), (iii) the Preference Share Paying Agent for

distribution to holders of Preference Shares (the "Preference Shareholders") and (iv) certain accounts established by the Trustee under the Indenture.

39.     All payments of Interest Proceeds and Principal Proceeds (collectively, "Proceeds") are made on each Distribution Date in the order, timing and amounts set forth in Sections 11.1(i) and (ii) of the Indenture (the "Priority of Payments"). The Priority of Payments contains a waterfall for distribution of Interest Proceeds in Section 11.1(i) (the "Interest Waterfall") and a waterfall for the distribution of Principal Proceeds in Section 11.1(ii) (the "Principal Waterfall"). The Interest Waterfall and the Principal Waterfall contain different payment priorities from one another.

40.     The Priority of Payments are subject to Section 13.1 of the Indenture.

41.     Each of subparagraphs 13.1(b) to (m) of the Subordination Provisions concerns a particular class of Note (the "Identified Class") and defines as "Subordinate Interests" those Notes that are junior in priority to the Identified Class. Each of subparagraphs 13.1(b) to (m) provides that upon the occurrence and continuation of an Event of Default, and acceleration of the Notes pursuant to Article 5 of the Indenture, the Notes in the Identified Class are to be paid in full, but only in accordance with the Priority of Payments.

42.     The Identified Class in Section 13.1(b) of the Indenture is Class A-1A.

43.     This Action concerns a dispute between and among Calyon as the holder of the majority of the Class A-1A Notes, Magnetar and, upon information and belief, one or more Noteholders, concerning distribution by the Trustee of the net Proceeds remaining after payments have been made in accordance with the Interest Waterfall and Proceeds Waterfall to satisfy certain amounts (the "Senior Payments") due under the Indenture other than to Calyon, the Noteholders and Magnetar as holder of Preference Shares. The dispute is based upon

conflicting interpretations of certain provisions of the Indenture, including Sections 1.1(a), 5.1(h), 11.1(i) - (ii) and 13.1, and related agreements or instruments, including the Class A-1A Note.

44.  Section 5.1 of the Indenture sets forth the Events of Default. Pursuant to the November 7 Notice, the Trustee purported to have notified, among others, the Noteholders, the Co-Issuers, Calyon and the Preference Shareholders that an Event of Default under Section 5.1(h) of the Indenture had occurred as of that date, allegedly, because of failure to satisfy a required ratio set forth in that Section (the "5.1(h) Ratio"). Upon information and belief, in doing so, the Trustee calculated the 5.1(h) Ratio by applying the so-called "Haircut Amount," as defined in Section 1.1(a) of the Indenture. However, under the express terms of the Indenture, the Haircut Amount is not applicable to the calculation of the 5.1(h) Ratio, and the Trustee's application of the Haircut Amount in determining the 5.1(h) Ratio was in error.

45.  Upon information and belief, Calyon contends that after the Senior Payments are made, all Interest Proceeds and Principal Proceeds must be combined, and applied to payments under the Class A-1A Notes or deposited into the Reserve Account, before any Interest Proceeds or Principal Proceeds are distributed to any of the Noteholders or Preference Shareholders.

46.  Based upon the express terms of the Indenture and related agreements, including the Class A-1A Note, Calyon's position is neither reasonable nor correct, and the Preference Shareholders are entitled to receive distribution of both Interest Proceeds and Principal Proceeds in accordance with the Priority of Payments of Section 11.1(i) and (ii).

**THE DISPUTE**

47.  It is Magnetar's position that as of the November 7 Notice, an Event of Default had not occurred in accordance with the terms of Section 5.1(h) of the Indenture and

accordingly, that the Trustee should not have given notice of an Event of Default under Section 5.1(h) of the Indenture as it did in the November 7 Notice. Upon information and belief, other parties to the Indenture agree with Magnetar's determination.

48. In the December 6 Notice, allegedly in accordance with its rights under Section 5.2(a)(ii)(A) of the Indenture on and after the occurrence and continuation of an Event of Default, and as the holder of a Majority of the Controlling Class, Calyon purported to (i) declare the principal of and accrued and unpaid interest on all of the Notes (including the Commitment Fee on the Class A-1A Notes) to be immediately due and payable and (ii) terminate the Reinvestment Period.

49. In the December 6 Notice, citing to Section 13.1(b) of the Indenture, Calyon instructed the Trustee that before distributing any Interest Proceeds or Principal Proceeds to any "Subordinate Interests," as that term is defined in Section 13.1(b) of the Indenture, to apply all Interest Proceeds and Principal Proceeds to pay amounts described in Sections 11.1(i)(A) through the *first* sub-clause (F) of the Indenture, including the Commitment Fee and interest payable to Calyon, and then to pay the principal of the Class A-1A Notes until the funded aggregate outstanding amount of such Notes had been paid in full.

50. In addition, in the December 6 Notice, Calyon purported to instruct the Trustee, allegedly pursuant to Section 13.1(b), that after payment of the foregoing amounts, all Interest Proceeds and Principal Proceeds must be deposited into the Reserve Account, until the unfunded Class A-1A Commitment Amount had been reduced to zero.

51. Upon information and belief, based upon current values of the underlying collateral, if the Trustee complied with Calyon's demand to deposit the Interest Proceeds and Principal Proceeds into the Reserve Account, thereby reducing Calyon's obligations under the A-

1A Agreement, all available Proceeds would be exhausted, such that there would not be any Proceeds available at any time thereafter to make any distributions of either Interest Proceeds or Principal Proceeds to any of the Noteholders or Preference Shareholders in accordance with Sections 11.1(i) and (ii) of the Indenture.

52. Calyon's position, as set forth in the December 6 Notice, is neither a reasonable nor a correct reading of the Indenture:

> (a) an Event of Default has not occurred and accordingly, Section 13.1(b), the provision on which Calyon purportedly relies, has not been triggered;
>
> (b) even if, *arguendo*, Section 13.1(b) did apply, it does not permit the commingling of Interest Proceeds and Principal Proceeds to make payments to Calyon, or permit payments to be made to Calyon other than in accordance with the Priority of Payments set forth in Sections 11.1(i) and (ii); and
>
> (c) even if, *arguendo*, Section 13.1(b) did alter the Priority of Payments, it only provides for the payment of amounts due under the Class A-1A Notes, not payments to other parties or to accounts and, accordingly, Section 13.1(b) does not provide for the deposits of Proceeds into the Reserve Account demanded by Calyon.

53. By reason of the foregoing, all amounts of Interest Proceeds and Principal Proceeds held as Interpleader Funds as of the date hereof, and distributions of Interest Proceeds and Principal Proceeds to be made on each subsequent Distribution Date, must be distributed to Magnetar in accordance with the Interest Waterfall and Principal Waterfall of the Priority of Payments set forth in Sections 11.1(i) and (ii), without exception.

**BASIS FOR AFFIRMATIVE CLAIMS**

54. An Event of Default did not occur as of November 7, 2007 under the Indenture and as such the Notes could not have not been accelerated and the Reinvestment Period could not have been terminated as of that date. Even if an Event of Default had occurred and the Notes had been properly accelerated and the Reinvestment Period terminated, the Subordination Provisions of Section 13.1 still require that payments be made in accordance with the Priority of Payments of Sections 11.1(i) and (ii) of the Indenture.

**An Event of Default Has Not Occurred**

55. Pursuant to the November 7 Notice, the Trustee purportedly provided notice that an Event of Default under Section 5.1(h) of the Indenture had occurred. Upon information and belief, the Trustee calculated the 5.1(h) Ratio by applying the Haircut Amount. However, Section 5.1(h) states that the Haircut Amount is only to be used in calculating the 5.1(h) Ratio if applicable, and, the express terms of the Indenture, including the definition of Haircut Amount in Section 1.1(a) of the Indenture, make clear that the Haircut Amount is not applicable to the calculation of the 5.1(h) Ratio. The reliance of the Trustee on the Haircut Amount in determining the 5.1(h) Ratio was in error.

56. If the Haircut Amount had not been applied in calculating the 5.1(h) Ratio, upon information and belief, the 5.1(h) Ratio would have been satisfied as of November 7, 2007 and no Event of Default under Section 5.1(h) of the Indenture would have existed, as the Trustee erroneously set forth in the November 7 Notice.

57. By reason of the foregoing, no Event of Default had occurred under Section 5.1(h) as purported in the November 7 Notice, nor has any other Event of Default been declared and all Interpleader Funds representing collections of Interest Proceeds and Principal Proceeds

must be distributed in accordance with Sections 11.1(i) and (ii) of the Indenture without reference to any conflicting interpretations of Section 13.1(b) or any other Section of the Indenture.

**Section 13.1(b) Does Not Alter the Priority of Payments**

58. Section 13.1(b) of the Indenture does not alter the Priority of Payments set forth in Sections 11.1(i) and (ii). Section 13.1(b) expressly provides that on and after an Event of Default and acceleration of the Notes, all payments of the Class A-1A Notes shall be made in accordance with the Priority of Payments. Payments to Calyon under Section 13.1(b) are senior to payments or distribution due any other recipient of Proceeds under the Interest Waterfall or the Principal Waterfall only to the extent that such payments are senior in priority pursuant to Section 11.1(i) and (ii). There is no provision under Section 13.1(b) permitting the commingling of Interest Proceeds and Principal Proceeds, and any payments due Calyon, even assuming that an Event of Default and acceleration had occurred, are subject to the order, timing and amounts set forth in the Priority of Payments.

59. Further, the application of Section 13.1(b) is limited to payments due under the Class A-1A Notes. Deposits into the Reserve Account under the Indenture are not obligations due under the Class A-1A Notes. The Reserve Account is an account maintained by the Trustee. There is no obligation under the Class A-1A Notes to make the deposits into the Reserve Account that Calyon has purported to demand under Section 13.1(b) of the Indenture.

60. By reason of the foregoing, the Court should issue an Order providing that the November 7 Notice purporting to call an Event of Default was incorrect and that no Event of Default had occurred on such date and, accordingly, that the Notes have not been properly accelerated and that the Reinvestment Period has not been terminated and, in any event, even if

such had occurred, that on the basis of the clear and unambiguous terms of the Indenture, Section 13.1 thereof does not alter the Priority of Payments set forth Sections 11.1(i) or (ii) of the Indenture. As a result, the Trustee is required to pay the Preference Share Paying Agent for distribution to Magnetar the Interpleader Funds and such other funds to be subsequently distributed in accordance with Sections 11.1(i) or (ii) as follows:

    (a)    Interest Proceeds should be distributed to the Preference Share Paying Agent for distribution to the Preference Shareholders in accordance with Section 11.1(i)(W) and 11.1(i)(CC) of the Interest Waterfall; and

    (b)    Principal Proceeds should be distributed to the Preference Share Paying Agent for distribution to the Preference Shareholders in accordance with Section 11.1(ii)(G) of the Principal Waterfall.

WHEREFORE, Interpleader Defendant Magnetar Constellation Master Fund, Ltd demands judgment:

    A.  In its favor and against all adverse interpleader defendants and requiring the distribution of all Interpleader Funds to the Preference Shareholders in accordance with the terms of the Interest Waterfall and Principal Waterfall under the Priority of Payments;

    B.  Awarding its costs and attorneys' fees incurred in defending this action to the full extent allowed by law; and

    C.  Awarding it such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 14, 2008

                               OTTERBOURG, STEINDLER, HOUSTON
                               & ROSEN, P.C.

                               By: _____
                                      Peter Feldman (PF-3271)

                               230 Park Avenue
                               New York, New York 10169
                               (212) 661-9100
                               Fax (917)306-4449
                               Email: pfeldman@oshr.com

                               *Attorneys for Interpleader Defendant*
                               *Magnetar Constellation Master Fund, Ltd*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record in this matter via the Court's Electronic Case Filing System on this 14th day of April, 2008, as well as on the parties on the attached service list in the manner so indicated.

Peter Feldman

**SERVICE LIST**

| | |
|---|---|
| Michael Edward Johnson, Esq.<br>Piret Loone, Esq.<br>c/o Alston & Bird, LLP<br>90 Park Avenue<br>New York, NY 10016<br>*Attorneys for Plaintiff Wells Fargo Bank, N.A.*<br><br>*Via ECF and U.S. Mail* | Scott E. Eckas, Esq.<br>Kevin J. Biron, Esq.<br>c/o McKee Nelson LLP<br>One Battery Park Plaza, 34th Floor<br>New York, NY 10004<br>*Attorneys for Defendant Calyon*<br><br>*Via ECF and U.S. Mail* |
| Issac Montal<br>Cede & Co.<br>55 Water Street<br>New York, New York 10041<br><br>*Via Federal Express* | |