**MCKEE NELSON LLP**
Scott E. Eckas (SE 7479)
Kevin J. Biron (KB 1030)
One Battery Park Plaza
New York, NY  10004
Tel:  (917) 777-4200
Fax:  (917) 777-4299

*Attorneys for Interpleader Defendant*
*CALYON*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee, <br><br> Interpleader Plaintiff, <br><br> - against - <br><br> CALYON, MAGNETAR CONSTELLATION MASTER FUND, LTD., CEDE & CO., as Holder of certain Global Notes and Preference Shares and nominee name of the Depository Trust Company, and DOES 1 through 100, owners of beneficial interests in the Global Notes and/or Preference Shares, <br><br> Interpleader Defendants. | Case No.:  1:08 CV 1297 (GEL-HBP) <br><br> Honorable Gerard E. Lynch <br><br> Magistrate Judge Pitman <br><br> **Electronically Filed** |

**FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES**
**OF CALYON AND AFFIRMATIVE CLAIM TO THE INTERPLEADER FUNDS**

Interpleader Defendant CALYON ("CALYON"), by its undersigned attorneys, as

and for its Answer and Affirmative Defenses to the Interpleader Complaint (the "Complaint") of

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), states as follows:

## INTRODUCTION

1.      CALYON admits that this is an interpleader action brought pursuant to 28 U.S.C. § 1335 and that Wells Fargo serves as Trustee[1] under the Indenture. CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 1. By way of further response, CALYON is the Holder of the unfunded $900 million Class A-1A Notes issued under the Indenture and constitutes the Controlling Class. CALYON acknowledges, as a result of the interpleader action filed by Wells Fargo in this court, a dispute exists regarding the proper distribution of Interest Proceeds and Principal Proceeds following an Event of Default and acceleration of the Notes. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until CALYON's remaining funding commitment under the Class A-1A Notes is reduced to zero) before any further payment or distribution is made on account of the Class A-lB Notes, Class S Notes, Class A-2 Notes, Class B Notes, Class C Notes, Class D Notes, Class E Notes, Class X Notes, and the Preference Shares (collectively, the "Subordinate Interests").

## JURISDICTION AND VENUE

2.      Admitted.[2]

3.      Admitted.

## PARTIES

4.      Admitted.

---

[1]   Capitalized terms not defined herein are defined as set forth in the Indenture referred to in the Complaint.

[2]   To the extent Calyon admits any of the allegations set forth in the Complaint, those admissions are made for purposes of this Answer only and shall not be construed as an admission for any other purpose in this or any other action.

5.      Admitted.

6.      Admitted.

7.      CALYON admits the allegations contained in the first sentence of paragraph 7 of the Complaint and that Cede & Co. is the registered Holder of record of the Global Notes (including Regulation S Global Notes and Restricted Global Notes).  CALYON denies the allegations contained in the second sentence of paragraph 7 of the Complaint.  CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in the third sentence of paragraph 8 of the Complaint.

8.      CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 8 of the Complaint.

9.      CALYON admits that it has consented to the jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City with respect to any suit, action or proceeding relating to the Class A-1A Note Purchase Agreement.  By way of further response, CALYON denies that it is a party to the Note Purchase Agreement referenced in paragraph 9 of the Complaint but admits that it is a party to the Class A-1A Note Purchase Agreement between Orion 2006-2, Ltd., as Issuer, Orion 2006-2, LLC, as Co-Issuer, CALYON, as Purchaser, and Wells Fargo, as Class A1-A Note Agent and Trustee, dated as of **December 7, 2006**.

10.     Admitted.

## **BACKGROUND**

11.     Admitted.  By way of further response, CALYON refers to the ***entire*** Indenture which speaks for itself.

12.     Admitted.

13.    CALYON admits that, pursuant to the Indenture, payments on the Notes, along with other amounts owed to various parties, are to be paid on a specified date each month from Interest Proceeds and Principal Proceeds collected by Wells Fargo in respect of the Collateral. CALYON denies the remaining allegations contained in paragraph 13.  By way of further response, CALYON refers to the *entire* Indenture which speaks for itself.

## THE DISPUTE

14.    Admitted.  By way of further response, CALYON refers to the Notice of Event of Default, dated November 7, 2007, which speaks for itself.

15.    CALYON denies the allegations contained in paragraph 15 of the Complaint.  By way of further response, CALYON refers to the *entire* Indenture which speaks for itself.

16.    CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 16 of the Complaint.

17.    Admitted.  By way of further response, CALYON refers to the written notice dated December 6, 2007 (the "December 6 Notice") and the *entire* Indenture, which speak for themselves.

18.    Admitted.  By way of further response, CALYON refers to the December 6 Notice and the *entire* Indenture, including but not limited to Section 13.1(b), which speak for themselves.  Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until CALYON's remaining funding commitment under the Class A-1A Notes is reduced to zero) before any further payment or distribution is made on account of the Subordinate Interests.

19.     CALYON admits the allegations in paragraph 19 of the Complaint except CALYON denies that there is no dispute regarding the payment of Principal Proceeds.  By way of further response, CALYON refers to the December 6 Notice and the *entire* Indenture, which speak for themselves.

20.     Admitted.  By way of further response, CALYON refers to the December 6 Notice and the *entire* Indenture, including but not limited to Section 13.1(b), which speak for themselves.  Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until CALYON's remaining funding commitment under the Class A-1A Notes is reduced to zero) before any further payment or distribution is made on account of the Subordinate Interests.

21.     Admitted.  By way of further response, CALYON refers to the December 6 Notice and the *entire* Indenture, including but not limited to Section 13.1(b), which speak for themselves.

22.     CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 22 of the Complaint.

23.     CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 23 of the Complaint.  By way of further response, CALYON refers to the *entire* Indenture, including but not limited to Section 13.1(b), which speaks for itself.  Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until CALYON's remaining funding

commitment under the Class A-1A Notes is reduced to zero) before any further payment or distribution is made on account of the Subordinate Interests.

24.     Admitted.  By way of further response, there is also a dispute as to the proper treatment of the Principal Proceeds on the monthly Distribution Date.

25.     CALYON denies knowledge or information sufficient to form a belief as to whether (i) a dispute exists regarding the occurrence of an Event of Default and (ii) Wells Fargo is able to determine in what manner any distribution of Interest Proceeds should occur. CALYON admits that the *entire* Indenture, including but not limited to Section 13.1(b), sets forth the proper distribution of the Interest Proceeds in the case of an Event of Default and acceleration of the Notes.  By way of further response, CALYON refers to the *entire* Indenture which speaks for itself and also sets forth the proper distribution of Principal Proceeds in the case of an Event of Default and acceleration of the Notes.

26.     CALYON admits that Wells Fargo commenced an interpleader action in the Supreme Court of the State of New York, County of New York, entitled *Wells Fargo Bank, N.A. v. CALYON et al*. (Index No. 650335/2007) on December 11, 2007 (the "Supreme Court Action").  CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 26 of the Complaint.  By way of further response, Wells Fargo filed a Notice of Discontinuance without Prejudice on February 8, 2008, voluntarily discontinuing the Supreme Court Action without prejudice.

27.     CALYON admits that the Distribution Dates referenced in paragraph 27 have occurred.  CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 27 of the Complaint.

28.     CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 28 of the Complaint.

29.     Admitted.  By way of further response, upon information and belief, the dispute over entitlement to Principal Proceeds is also likely to recur on succeeding Distribution Dates.

30.     CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 30 of the Complaint.

31.     CALYON admits that Wells Fargo did not bring this action in collusion with CALYON.  CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 31 of the Complaint to the extent they refer to the other Interpleader Defendants.

## ANSWER TO PLEA FOR RELIEF

32.     CALYON admits that Wells Fargo seeks the relief set forth in paragraphs (i) through (iv) in the Plea for Relief and consents to the relief requested in paragraphs (i) and (ii). CALYON denies that Wells Fargo is entitled to the relief requested in paragraphs (iii) and (iv).

## AFFIRMATIVE DEFENSES

33.     CALYON states the following affirmative defenses without assuming the burden of proof of any such defense that would otherwise rest on Wells Fargo or the other Interpleader Defendants:

## FIRST DEFENSE

34.     Because the Complaint does not plead sufficient facts to enable CALYON to determine all of its applicable defenses with respect to the underlying dispute, CALYON reserves its right to assert any and all additional defenses once the precise nature of the claims can be ascertained.

## SECOND DEFENSE

35.     CALYON asserts all other affirmative defenses that may be revealed during the course of discovery.

WHEREFORE, CALYON respectfully requests this Court enter an order:

(i)     directing Interpleader Defendants to interplead and to settle all claims to Interest and Principal Proceeds among themselves and any other persons who claim or may claim an interest, beneficial or legal, in such Interest and Principal Proceeds;

(ii)     restraining Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the Interest and Principal Proceeds, from commencing or prosecuting any separate proceedings concerning or relating to the issues in this action; and

(iii)     granting such other and further relief as this Court deems just and proper.

## AFFIRMATIVE CLAIM OF CALYON
## TO THE INTERPLEADER FUNDS AND TO FUTURE DISTRIBUTIONS

Interpleader Defendant CALYON, by its undersigned attorneys, as and for its Affirmative Claim to the Interpleader Funds and to Future Distributions, states as follows:

### NATURE OF THIS ACTION

1.      As set forth in the Complaint, Wells Fargo Bank, N.A. ("Wells Fargo") – in its capacity as Trustee under the indenture, dated December 7, 2006 (the "Indenture"), by and among itself, Orion 2006-2, Ltd. (the "Issuer") and Orion 2006-2, LLC (the "Co-Issuer") – has commenced this interpleader action to resolve how certain proceeds of the assets owned by the Issuer and pledged to Wells Fargo should be distributed following an Event of Default and acceleration of the Notes issued by the Issuer.  Each capitalized term used but not defined herein has the meaning ascribed to such term in the Indenture.

2.      By this claim, CALYON, as the holder of the unfunded Class A-1A Notes, seeks an adjudication that – following an Event of Default and acceleration – the Indenture requires that the proceeds of the Issuer's assets be applied to pay the Class A-1A Notes in full (including, but not limited to, deposits into a reserve account to defease CALYON's remaining funding commitment thereon) before any further payment or distribution is made on account of the Class A-lB Notes, Class S Notes, Class A-2 Notes, Class B Notes, Class C Notes, Class D Notes, Class E Notes, Class X Notes, and the Preference Shares (collectively, the "Subordinate Interests").

### ALLEGATIONS OF FACT

A.      **Background**

3.      This dispute arises out of a collateralized debt obligation ("CDO") transaction called Orion 2006-2, which closed on or about December 7, 2006 (the "Transaction").

4.    A CDO is a transaction in which a special purpose vehicle (referred to as the "issuer" and which generally is an offshore entity) is formed to (i) issue notes (which may be funded or unfunded) and/or equity securities (collectively, the "CDO liabilities") to investors and (ii) use the proceeds of that issuance to acquire a portfolio of (A) bonds, loans or other assets (referred to as "cash assets") and/or (B) credit derivative transactions referencing certain bonds or bond indices (referred to as "synthetic assets"). This asset portfolio and the income stream earned thereon serve as collateral for the issuer's secured obligations to investors. Proceeds from the asset portfolio (*e.g.*, interest payments on bonds owned by the issuer, premium payments on credit default swaps constituting synthetic assets, etc.) are the main source of funds for payments on account of the CDO liabilities.

5.    Upon information and belief, in this Transaction, the assets held by the Issuer include (i) cash assets, (ii) synthetic assets and (iii) funds held in a reserve account (the "Reserve Account").

6.    The principal liabilities of the Issuer are (i) the "super senior" $900 million Class A-1A Notes (which may be funded or unfunded at any given time), (ii) several subordinate tranches of funded notes (*i.e.*, Classes A-1B, S, A-2, B, C, D, E and X) (together with the Class A-1A Notes, the "Notes") and (iii) an equity tranche (*i.e.*, the Preference Shares).

7.    CALYON is the holder of the Class A-1A Notes and constitutes the Controlling Class under the Indenture.

8.    The Class A-1A Notes were unfunded at the time of issuance. Pursuant to the Indenture and the Class A-1A Note Purchase Agreement, the Issuer has the right to draw funds under the Class A-1A Notes if (i) the Issuer is required to make certain payments on account of

the synthetic assets <u>and</u> (ii) there are insufficient funds in certain accounts established by Wells Fargo, including the Reserve Account.

9.    CALYON's funding commitment under the Class A-1A Notes is capped at the Remaining Unfunded Class A-1A Commitment Amount (*i.e.*, $900 million *minus* amounts previously funded and remaining unpaid *minus* deposits made into the Reserve Account) under the Indenture.    Thus, deposits into the Reserve Account defease CALYON's funding commitment under the Class A-1A Notes.

10.    The Indenture provides that, to the extent that the funds previously deposited into the Reserve Account ultimately are not required to satisfy certain of the Issuer's obligations (including those on the synthetic assets), such funds are available for distribution on account of the Subordinate Interests.

11.    Upon information and belief, Interpleader Defendant Magnetar Constellation Master Fund, Ltd ("Magnetar") is the holder of the Preference Shares.

**B.    <u>Seniority of the Class A-1A Notes</u>**

12.    As in other CDO transactions, one of the key legal documents governing the Transaction is the Indenture.  The Indenture is a contract executed by and between Wells Fargo, as the Trustee representing the holders of the Notes, the Issuer and the Co-Issuer.  Among other things, the Indenture contains covenants that set forth certain terms of the Notes and the Preference Shares, Events of Default and the Transaction participants' rights and obligations upon the occurrence of an Event of Default.

13.    Pursuant to the Indenture, one of the duties of Wells Fargo is to collect the proceeds generated by the Issuer's assets and periodically distribute those funds to satisfy the Issuer's payment obligations, including those owed on the Notes and Preference Shares.  To the

extent particular assets perform poorly (*e.g.*, bonds owned by the Issuer or referenced by the synthetic assets default on principal and/or interest payments), the incoming cash-flows are diminished and there is less money available to satisfy the Issuer's obligations.

14.    Absent an Event of Default and acceleration, the Priority of Payments in Section 11.1 of the Indenture sets forth how the proceeds generated by the Issuer's assets (*i.e.*, Interest Proceeds and Principal Proceeds) periodically will be distributed to satisfy the Issuer's payment obligations, including its payment obligations on account of the Class A-1A Notes.

15.    Pursuant to the Priority of Payments in Section 11.1, the Issuer has the following four payment obligations on account of the Class A-1A Notes held by CALYON:  (i) interest payments on amounts previously funded by CALYON, (ii) a commitment fee on the Remaining Unfunded Class A-1A Commitment Amount, (iii) repayment of amounts previously funded by CALYON and (iv) deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero (collectively, the "Class A-1A Payment Obligations").

16.    The Priority of Payments in Section 11.1 expressly provides that it is "subject to" Section 13.1 of the Indenture.

17.    Section 13.1(b) of the Indenture provides:

> Anything in this Indenture or the Notes to the contrary notwithstanding, the Issuer and the Holders of the Class A-lB Notes, Class S Notes, Class A-2 Notes, Class B Notes, Class C Notes, Class D Notes, Class E Notes and Class X Notes agree for the benefit of the holders of the Class A-lA Notes that the Class A-lB Notes, Class S Notes, Class A-2 Notes, Class B Notes, Class C Notes, Class D Notes, Class E Notes and Class X Notes and the Issuer's rights in and to the Collateral (with respect to the Class A-lA Notes, the "Subordinate Interests") shall be subordinate and junior to the Class A-lA Notes to the extent and in the manner set forth in this Indenture and in the Class A-lA Note Purchase Agreement, including as set forth in Section 11.1 and hereinafter provided.  **If any Event of Default has not been cured or waived and acceleration occurs in accordance with Section 5, including**

12

> **as result of an Event of Default specified in <u>Section 5.1(f)</u> or <u>(g)</u>, the Class A-lA Notes shall be paid in full in Cash before any further payment or distribution is made on account of the Subordinate Interests, in either case, in accordance with the Priority of Payments [in Section 11.1].** The Holders of Notes evidencing Subordinate Interests and the holders of equity in the Issuer and the Co-Issuer agree, for the benefit of the Holders of the Class A-1A Notes not to cause the filing of a petition in bankruptcy against the Issuer or the Co-Issuer for failure to pay to them amounts due under the Notes evidencing such Subordinate Interests or hereunder until the payment in full of the Class A-lA Notes and not before one year and one day have elapsed since such payment or, if longer, the applicable preference period then in effect, including any period established pursuant to the laws of the Cayman Islands.

Indenture § 13.1(b) (emphasis added). Accordingly – following an Event of Default and acceleration – Section 13.1(b) of the Indenture requires the Class A-1A Payment Obligations be satisfied in full before any further payment or distribution on account of the Subordinate Interests.

## C.    <u>The Event of Default and Acceleration of the Notes</u>

18.    Upon information and belief, an Event of Default has occurred and is continuing under Section 5.1(h) of the Indenture.

19.    On November 7, 2007, Wells Fargo notified the relevant parties that an Event of Default had occurred under Section 5.1(h) of the Indenture.

20.    Thereafter and as a result of Wells Fargo's notification that an Event of Default had occurred, CALYON – exercising its rights as the Controlling Class – (i) declared the principal and accrued/unpaid interest on the Notes (and the commitment fee on the Class A-1A Notes) to be immediately due and payable and (ii) terminated the Reinvestment Period. Relying on Section 13.1 of the Indenture, CALYON also demanded Wells Fargo distribute all amounts payable on account of the Class A-1A Notes (including, but not limited to, deposits in Cash into

the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment on account of the Subordinate Interests.

21.     Upon information and belief, Magnetar informed Wells Fargo that it disagreed with CALYON's position regarding the distribution of funds following an Event of Default and acceleration.     Upon information and belief, Magnetar also challenged Wells Fargo's determination that an Event of Default had occurred.

22.     Thereafter, Wells Fargo commenced this interpleader action to resolve how Interest Proceeds and Principal Proceeds should be distributed following an Event of Default and acceleration.  Upon information and belief, Wells Fargo is holding the disputed funds in escrow (the "Interpleader Escrow").

<u>**RELIEF REQUESTED**</u>

WHEREFORE, Interpleader Defendant and Claimant CALYON respectfully requests that the Court enter judgment in its favor as follows:

(i)     declaring that all Interest Proceeds and Principal Proceeds be applied to satisfy the Class A-1A Payment Obligations in full before any further payment or distribution is made on account of the Subordinate Interests;

(ii)     directing Wells Fargo to distribute all amounts in the Interpleader Escrow to satisfy the Class A-1A Payment Obligations in full before any further payment or distribution is made on account of the Subordinate Interests;

(iii)     directing Wells Fargo, on all future Distribution Dates, to distribute all Interest Proceeds and Principal Proceeds to satisfy the Class A-1A Payment Obligations in full before any further payment or distribution is made on account of the Subordinate Interests; and

(iv)     awarding such other and further relief as this Court deems just and proper.

14

Dated: New York, New York
       July 7, 2008

                              Respectfully submitted,


                                /s/  Scott E. Eckas

                              Scott E. Eckas (SE 7479)
                              Kevin J. Biron (KB 1030)
                              McKee Nelson LLP
                              One Battery Park Plaza, 34th Floor
                              New York, NY 10004
                              Tel: (917) 777-4200
                              Fax: (917) 777-4299

                              *Attorneys for Interpleader Defendant
                              CALYON*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused the First Amended Answer and Affirmative Defenses of CALYON and Affirmative Claim to the Interpleader Funds to be filed electronically, and served the First Amended Answer and Affirmative Defenses of CALYON and Affirmative Claim to the Interpleader Funds by causing a true and correct copy thereof to be sent via the Court's electronic filing system to each named recipient below.

Alston & Bird, LLP
90 Park Avenue
New York, New York  10016
P:  (212) 210-9400
F:  (212) 210-9444
ATTN:  Michael E. Johnson, Esq.
Email:  mjohnson@alston.com
*Attorneys for Interpleader Plaintiff*
*Wells Fargo Bank, N.A.*

Eiseman, Levine, Lehrhaupt &
Kakoyiannis, P.C.
805 Third Avenue, 10th Floor
New York, NY 10022
P:  (212) 752-1000
F:  (212)355-4608
ATTN:  Eric P. Heichel
Email:  eheichel@eisemanlevine.com
*Attorneys for Interpleader Defendant*
*Cede & Co.*

Otterbourg, Steindler, Houston & Rosen PC
230 Park Avenue
New York, New York  10169
P:  (212) 661-9100
F:  (212) 682-6104
ATTN:  Peter L. Feldman, Esq.
Email:  pfeldman@oshr.com
*Attorneys for Interpleader Defendant*
*Magnetar Constellation Master Fund, Ltd.*

Dated:     New York, New York
           July 7, 2008

                                    McKee Nelson LLP

                                     /s/  Kevin J. Biron
                                    Scott E. Eckas (SE 7479)
                                    Kevin J. Biron (KB 1030)
                                    One Battery Park Plaza
                                    New York,  NY  10004
                                    Tel: (917) 777-4200
                                    Fax: (917) 777-4299
                                    *Attorneys for Interpleader Defendant*
                                    *CALYON*