**McKee Nelson LLP**
Scott E. Eckas (SE 7479)
Kevin J. Biron (KB 1030)
One Battery Park Plaza
New York, NY  10004
Tel:  (917) 777-4200
Fax: (917) 777-4299

*Attorneys for Interpleader Defendant CALYON*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee,<br><br>Interpleader Plaintiff,<br><br>- against -<br><br>CALYON, MAGNETAR CONSTELLATION MASTER FUND, LTD., CEDE & CO., as Holder of certain Global Notes and Preference Shares and nominee name of the Depository Trust Company, and DOES 1 through 100, owners of beneficial interests in the Global Notes and/or Preference Shares,<br><br>Interpleader Defendants. | Case No.:  1:08 CV 1297 (GEL-HBP)<br><br>Honorable Gerard E. Lynch<br><br>Magistrate Judge Pitman<br><br>**Electronically Filed** |

### ANSWER OF CALYON TO THE AFFIRMATIVE CLAIM TO THE INTERPLEADER FUNDS AND FUTURE DISTRIBUTIONS ASSERTED IN THE ANSWER OF MAGNETAR CONSTELLATION MASTER FUND, LTD

Interpleader Defendant CALYON, by its undersigned attorneys, as and for its Answer to the allegations set forth in the Affirmative Claim to Magnetar's Share of the Interpleader Funds and Future Distributions (the "Affirmative Claim") asserted in the Answer

(the "Magnetar Answer") of Defendant Magnetar Constellation Master Fund, Ltd ("Magnetar"), filed on April 14, 2008, states as follows:

## ANSWER TO THE ALLEGATIONS IN THE AFFIRMATIVE CLAIM

32. In paragraph 32 of the Magnetar Answer,[1] Magnetar repeats and realleges each and every admission and denial set forth in paragraphs 1 through 31 of the Magnetar Answer to the Interpleader Complaint. The Interpleader Complaint contains allegations regarding the parties to – and the events underlying – this interpleader action. The only substantive allegation contained in paragraphs 1 through 31 of the Magnetar Answer is that Magnetar disagrees with CALYON's interpretation of the Indenture. No answer is required to that allegation because it is a conclusion of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies that allegation. By way of further response, CALYON refers to the Indenture and the Class A-1A Note Purchase Agreement, which speak for themselves.[2]

33. CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in the first sentence of paragraph 33 of the Magnetar Answer. CALYON denies the allegations contained in the second sentence of paragraph 33 of the Magnetar Answer. By way of further response, CALYON refers to the Preference Share Paying Agency Agreement, which speaks for itself, and provides, *inter alia*, that the dividends and any final distribution on the Preference Shares are payable in accordance with the Issuer Charter, the Indenture and the Preference Share Paying Agency Agreement.

---

[1] Magnetar begins to state its affirmative claim in paragraph 32 of its Answer. For the convenience of the Court, CALYON has used paragraph numbers corresponding to those used by Magnetar and, accordingly, begins it response at paragraph 32.

[2] The Indenture is defined in the Interpleader Complaint (the "Complaint") filed by Wells Fargo Bank, N.A. ("Wells Fargo"). Each capitalized term used but not defined herein has the meaning given to such term in the Indenture.

34.     CALYON admits the allegations contained in the first and last sentences of paragraph 34 of the Magnetar Answer and that CALYON entered into the Class A-1A Note Purchase Agreement, dated December 7, 2006, with the Issuer, the Co-Issuer and Wells Fargo, in its capacities as the Trustee under the Indenture and the Class A-1A Note Agent.  CALYON denies the remaining allegations contained in paragraph 34 of the Magnetar Answer.  By way of further response, CALYON refers to the Indenture and the Class A-1A Note Purchase Agreement, which speak for themselves.  Pursuant to the Indenture, the Issuer issued the $900,000,000 Class A-1A Senior Secured Floating Rate Variable Funding Notes (the "Class A-1A Notes") on December 7, 2006 (the "Closing Date").  Pursuant to the Class A-1A Note Purchase Agreement, the Issuer sold the Class A-1A Notes to CALYON on the Closing Date.  The Class A-1A Notes were unfunded at the time of issuance.  Pursuant to the Indenture and the Class A-1A Note Purchase Agreement, the Issuer has the right to borrow funds from CALYON under the Class A-1A Notes if (i) the Issuer is required to make certain specified payments <u>and</u> (ii) there are insufficient funds in certain accounts established by Wells Fargo, including the Reserve Account.  CALYON's funding commitment under the Class A-1A Notes is capped at the Remaining Unfunded Class A-1A Commitment Amount (*i.e.*, $900 million *minus* amounts previously funded and remaining unpaid *minus* deposits made into the Reserve Account).  Deposits into the Reserve Account reduce the Remaining Unfunded Class A-1A Commitment Amount and, thus, defease CALYON's funding commitment under the Class A-1A Notes.  The Remaining Unfunded Class A-1A Commitment Amount currently is $900 million.

35.     CALYON denies that the Offering Memorandum is dated December 6, 2006.  CALYON admits the remaining allegations contained in paragraph 35 of the Magnetar Answer.  By way of further response, CALYON refers to the Indenture and the Offering Memorandum,

dated **December 7, 2006**, which speak for themselves.  CALYON and CALYON Securities (USA) Inc. were the Initial Purchasers of the Notes and the Preference Shares.  In this capacity, CALYON and CALYON Securities (USA) Inc. offered the Notes and the Preference Shares to prospective purchasers.

36.     Admitted.  By way of further response, CALYON refers to the Indenture and the Class A-1A Note Purchase Agreement, which speak for themselves.  Pursuant to the Indenture and the Class A-1A Note Purchase Agreement, the Issuer has the right to borrow funds from CALYON under the Class A-1A Notes if (i) the Issuer is required to make certain specified payments <u>and</u> (ii) there are insufficient funds in certain accounts established by Wells Fargo, including the Reserve Account.  CALYON's funding commitment under the Class A-1A Notes is capped at the Remaining Unfunded Class A-1A Commitment Amount (*i.e.*, $900 million *minus* amounts previously funded and remaining unpaid *minus* deposits made into the Reserve Account).  Deposits into the Reserve Account reduce the Remaining Unfunded Class A-1A Commitment Amount and, thus, defease CALYON's funding commitment under the Class A-1A Notes.  The Remaining Unfunded Class A-1A Commitment Amount currently is $900 million.

37.     Admitted.  By way of further response, CALYON refers to the Indenture, the Class A-1A Note Purchase Agreement, the Preference Share Paying Agency Agreement and the Issuer Charter, which speak for themselves.

38.     CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 38 of the Magnetar Answer.  By way of further response, CALYON refers to the Indenture, which speaks for itself.  The Indenture requires that Wells Fargo, on behalf of the Issuer, periodically distribute Interest Proceeds and Principal Proceeds in accordance therewith.

39.     CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in the first sentence of paragraph 39 of the Magnetar Answer.  CALYON admits the remaining allegations contained in paragraph 39 of the Magnetar Answer.  By way of further response, CALYON refers to the *entire* Indenture, including but not limited to Section 13.1(b), which speaks for itself.  Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-lB Notes, Class S Notes, Class A-2 Notes, Class B Notes, Class C Notes, Class D Notes, Class E Notes, Class X Notes and the Preference Shares (collectively, the "Class A-1A Subordinate Interests").

40.     Admitted.  By way of further response, CALYON refers to the Indenture, which speaks for itself.

41.     Denied.  By way of further response, CALYON refers to the Indenture, which speaks for itself.  Each of Subsections 13.1(b) to 13.1(m) of the Indenture defines the "Subordinate Interests" with respect to a particular class of Notes (the "Identified Class").  Each of Subsections 13.1(b) to 13.1(m) provides that, upon the occurrence and continuation of an Event of Default and acceleration of the Notes, the Notes in the Identified Class must be paid in full before any further payment or distribution (which would otherwise have been made in accordance with the Priority of Payments) is made on account of the Subordinate Interests.

42.     CALYON admits that Section 13.1(b) provides that the Class A-1A Subordinate Interests are subordinate to the Class A-1A Notes.  CALYON denies the remaining allegations contained in paragraph 42 of the Magnetar Answer.  By way of further response, CALYON

5

refers to Section 13.1(b) of the Indenture, which speaks for itself. Section 13.1(b) provides that, upon the occurrence and continuation of an Event of Default and acceleration of the Notes, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

43. CALYON admits that Wells Fargo commenced this interpleader action to resolve how certain proceeds of the assets owned by the Issuer and pledged to Wells Fargo should be distributed following an Event of Default and acceleration of the Notes. CALYON denies the remaining allegations contained in the first sentence of paragraph 43 of the Magnetar Answer. CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 43 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture and the Class A-1A Note Purchase Agreement, which speak for themselves. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

44. CALYON admits the allegations contained in the first sentence of paragraph 44 of the Magnetar Answer. CALYON denies the allegations contained in the second and fourth sentences of paragraph 44 of the Magnetar Answer. CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 44 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture, including but

not limited to Section 5.1(h), and the Notice of Event of Default, dated November 7, 2007 (the "November 7 Notice"), which speak for themselves. The Haircut Amount is applicable in calculating the ratio set forth in Section 5.1(h).

45.   Denied. By way of further response, CALYON refers to the Indenture, including but not limited to Section 13.1(b), which speaks for itself. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

46.   No answer is required to paragraph 46 of the Magnetar Answer because it contains conclusions of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies the allegations contained in paragraph 46 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture, including but not limited to Section 13.1(b), which speaks for itself. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

47.   CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 47 of the Magnetar Answer.

48.   Denied. By way of further response, CALYON refers to the written notice dated December 6, 2007 (the "December 6 Notice") and the Indenture, which speak for themselves.

CALYON is the Holder of the Class A-1A Notes and constitutes the Controlling Class under the Indenture. As set forth in the December 6 Notice and as a result of Wells Fargo's notification that an Event of Default had occurred, CALYON – exercising its rights as the Controlling Class – (i) declared the principal and accrued/unpaid interest on the Notes (including the commitment fee on the Class A-1A Notes) to be immediately due and payable and (ii) terminated the Reinvestment Period.

49.     Denied. By way of further response, CALYON refers to the December 6 Notice and the Indenture, which speak for themselves. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

50.     Denied. By way of further response, CALYON refers to the December 6 Notice and the Indenture, which speak for themselves. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

51.     CALYON admits that deposits into the Reserve Account reduce CALYON's funding commitment under the Class A-1A Notes. CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 51 of the Magnetar Answer.

52. No answer is required to paragraph 52 of the Magnetar Answer because it contains conclusions of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies the allegations contained in paragraph 52 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture, which speaks for itself. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

53. No answer is required to paragraph 53 of the Magnetar Answer because it contains conclusions of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies the allegations contained in paragraph 53 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture, which speaks for itself. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

54. No answer is required to paragraph 54 of the Magnetar Answer because it contains conclusions of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies the allegations contained in paragraph 54 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture and the November 7 Notice, which speak for themselves. In the November 7 Notice, Wells Fargo notified the relevant parties that

an Event of Default had occurred under Section 5.1(h) of the Indenture. Thereafter and as a result of Wells Fargo's notification that an Event of Default had occurred, CALYON – exercising its rights as the Controlling Class – declared the principal and accrued/unpaid interest on the Notes (and the commitment fee on the Class A-1A Notes) to be immediately due and payable. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

55.    CALYON denies the allegations contained in the first, third and fourth sentences of paragraph 55 of the Magnetar Answer. CALYON denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 55 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture, including but not limited to Section 5.1(h), and the November 7 Notice, which speak for themselves. The Indenture requires the application of the Haircut Amount in calculating the ratio set forth in Section 5.1(h).

56.    No answer is required to paragraph 56 of the Magnetar Answer because it contains conclusions of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 56 of the Magnetar Answer.

57.    No answer is required to paragraph 57 of the Magnetar Answer because it contains conclusions of law and argumentative rhetoric. To the extent any answer may be required, CALYON denies the allegations contained in paragraph 57 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture and the November 7 Notice, which

10

speak for themselves. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

58.     Denied. By way of further response, CALYON refers to the entire Indenture, including but not limited to Section 13.1(b), which speaks for itself. Section 13.1(b) provides that, upon the occurrence and continuation of an Event of Default and acceleration of the Notes, the Class A-1A Notes must be paid in full (including, but not limited to, deposits into the Reserve Account until the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero) before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

59.     CALYON admits the allegations contained in the third sentence of paragraph 59 of the Magnetar Answer. CALYON denies the remaining allegations contained in paragraph 59 of the Magnetar Answer. By way of further response, CALYON refers to the Indenture and the Class A-1A Note Purchase Agreement, which speak for themselves. Pursuant to the Indenture and the Class A-1A Note Purchase Agreement, the Class A-1A Notes will not be paid in full until the Aggregate Outstanding Amount of the Class A-1A Notes is reduced to zero and deposits have been made into the Reserve Account such that the Remaining Unfunded Class A-1A Commitment Amount is reduced to zero. Pursuant to the Indenture, because an Event of Default has not been cured or waived and acceleration of the Notes has occurred, the Class A-1A Notes must be paid in full before any further payment or distribution is made on account of the Class A-1A Subordinate Interests.

60. No answer is required to paragraph 60 of the Magnetar Answer because it contains conclusions of law, argumentative rhetoric and statements that are not directed at CALYON. To the extent any answer may be required, CALYON denies the allegations contained in paragraph 60 of the Magnetar Answer.

## ANSWER TO REQUEST FOR RELIEF

61. CALYON admits that Magnetar seeks the relief set forth in its Request for Relief contained in the "Wherefore" paragraph of the Magnetar Answer. CALYON specifically denies that Magnetar is entitled to any such relief or that this Court is entitled to grant such relief. CALYON further denies the remaining allegations contained in the Request for Relief and denies that Magnetar is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1. CALYON states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Magnetar:

### FIRST DEFENSE

2. The Affirmative Claim is barred because Magnetar lacks standing to assert such a claim and is not the real party in interest.

### SECOND DEFENSE

3. The allegations in the Affirmative Claim fail to state a plausible entitlement to relief.

### THIRD DEFENSE

4. The allegations in the Affirmative Claim fail to state a claim to the Interpleader Escrow upon which relief may be granted.

### FOURTH DEFENSE

5. The Affirmative Claim is barred, in whole or in part, under the doctrines of unclean hands and *in pari delicto*.

### FIFTH DEFENSE

6. The Affirmative Claim is barred, in whole or in part, by the doctrines of estoppel, waiver, ratification, and acquiescence.

### SIXTH DEFENSE

7. The Affirmative Claim is barred by the doctrine of accord and satisfaction.

**SEVENTH DEFENSE**

8. The allegations in the Affirmative Claim misstate and misinterpret the applicable provisions of the Indenture, the Class A-1A Note Purchase Agreement and other relevant transaction documents.

**EIGHTH DEFENSE**

9. The Affirmative Claim is barred, in whole or in part, because Magnetar has no current claim to the funds in the Interpleader Escrow.

**NINTH DEFENSE**

10. The Affirmative Claim is barred, in whole or in part, because Magnetar has incurred no damages.

**TENTH DEFENSE**

11. The Affirmative Claim is barred, in whole or in part, because Magnetar's interpretation of the Indenture would frustrate the purpose thereof.

**ELEVENTH DEFENSE**

12. The Affirmative Claim is barred, in whole or in part, because Magnetar is unable to bring such a claim pursuant to the terms of the Indenture.

**TWELFTH DEFENSE**

13. The Affirmative Claim is barred, in whole or in part, because Magnetar assumed the risk of loss on the Notes.

**THIRTEENTH DEFENSE**

14. Because the Affirmative Claim does not plead sufficient facts to enable CALYON to determine all of its applicable defenses, CALYON expressly reserves its right to assert any and all additional defenses once the precise nature of the claims can be ascertained.

## FOURTEENTH DEFENSE

15. CALYON asserts all other affirmative defenses that may be revealed during the course of discovery.

## FIFTEENTH DEFENSE

16. CALYON hereby adopts and incorporates by reference any and all other affirmative defenses asserted or to be asserted by any other defendant to the extent CALYON may share in or be entitled to assert such affirmative defenses.

WHEREFORE, CALYON respectfully requests that this Court enter an order dismissing the Affirmative Claim with prejudice, awarding CALYON its costs, expenses, and reasonable attorneys' fees in defending against the Affirmative Claim, and granting such other and further relief as is just and proper.

Dated:       New York, New York
             July 28, 2008

                              Respectfully submitted,

                                /s/  Scott E. Eckas

                              Scott E. Eckas (SE 7479)
                              *seckas@mckeenelson.com*
                              Kevin J. Biron (KB 1030)
                              *kbiron@mckeenelson.com*
                              McKee Nelson LLP
                              One Battery Park Plaza, 34th Floor
                              New York, NY 10004
                              Tel: (917) 777-4200
                              Fax: (917) 777-4299

                              *Attorneys for Interpleader Defendant*
                              *CALYON*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused each of (i) the Answer of CALYON to the Affirmative Claim to the Interpleader Funds and Future Distributions Asserted in the Answer of Magnetar Constellation Master Fund, Ltd and (ii) the Answer of CALYON to the Affirmative Claim of Magnetar Constellation Master Fund, Ltd to the Interpleader Funds and Future Distributions to be filed electronically and served the above-referenced documents by causing a true and correct copy thereof to be sent via the Court's electronic filing system and by U.S. Mail to each named recipient below.

Alston & Bird, LLP
90 Park Avenue
New York, New York  10016
P:  (212) 210-9400
F:  (212) 210-9444
ATTN:  Michael E. Johnson, Esq.
Email:  mjohnson@alston.com
*Attorneys for Interpleader Plaintiff*
*Wells Fargo Bank, N.A.*

Otterbourg, Steindler, Houston & Rosen PC
230 Park Avenue
New York, New York  10169
P:  (212) 661-9100
F:  (212) 682-6104
ATTN:  Peter L. Feldman, Esq.
Email:  pfeldman@oshr.com
*Attorneys for Interpleader Defendant*
*Magnetar Constellation Master Fund, Ltd.*

Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C.
805 Third Avenue, 10th Floor
New York, NY 10022
P:  (212) 752-1000
F:  (212)355-4608
ATTN:  Eric P. Heichel
Email:  eheichel@eisemanlevine.com
*Attorneys for Interpleader Defendant*
*Cede & Co.*

Dated:   New York, New York
         July 28, 2008

                                                 McKee Nelson LLP

                                                  /s/  *Kevin J. Biron*
                                                 Scott E. Eckas (SE 7479)
                                                 Kevin J. Biron (KB 1030)
                                                 One Battery Park Plaza
                                                 New York,  NY  10004
                                                 Tel:  (917) 777-4200
                                                 Fax: (917) 777-4299
                                                 *Attorneys for Interpleader Defendant*
                                                 *CALYON*