UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WELLS FARGO BANK, N.A., as Trustee,

                Interpleader Plaintiff,

- against -

CALYON, MAGNETAR CONSTELLATION MASTER
FUND, LTD., CEDE & CO., as Holder of certain Global
Notes and Preference Shares and nominee name of the
Depositary Trust Company, and DOES 1 through 100, owners
of beneficial interests in the Global Notes and/or Preference
Shares,

                Interpleader Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 08 CV 1297
(GEL) (HBP)

## AMENDED ANSWER OF MAGNETAR CONSTELLATION MASTER FUND, LTD TO INTERPLEADER COMPLAINT AND AMENDED AFFIRMATIVE STATEMENT OF CLAIM TO INTERPLEADER FUNDS

Interpleader Defendant MAGNETAR CONSTELLATION MASTER FUND, LTD, ("Magnetar"), through its undersigned attorneys, Otterbourg, Steindler, Houston & Rosen, P.C., as and for its Answer to the Interpleader Complaint ("Complaint") filed by Interpleader Plaintiff WELLS FARGO BANK, N.A., as Trustee (the "Trustee") of the Indenture dated December 7, 2006, by and among Wells Fargo Bank., N.A., as Trustee, Orion 2006-2, Ltd. as Issuer, and Orion 2006-2, LLC, as Co-Issuer (the "Indenture"), respectfully alleges as follows:[1]

    1.    Admits the allegations contained in Paragraph 1 of the Complaint, except denies knowledge or information sufficient to form a belief as to the allegation that the Trustee cannot determine, without hazard to itself, how to proceed and denies that an Event of Default was properly declared.

    2.    Admits that the Court has jurisdiction over the subject matter of this Complaint.

---

[1] Except as otherwise defined herein, all defined terms herein have the meanings set forth in the Indenture.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 4 of the Complaint and, upon information and belief, admits the allegations contained in the second sentence of Paragraph 4 of the Complaint.

5. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 5 of the Complaint and, upon information and belief, admits the allegations contained in the second sentence of Paragraph 5 of the Complaint.

6. Admits the allegations contained in Paragraph 6 of the Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9. Admits the allegations contained in Paragraph 9 of the Complaint.

10. Denies the allegations contained in Paragraph 10 of the Complaint, except admits that Magnetar consents to the jurisdiction of this Court solely to adjudicate the conflicting claims of the defendants in this action to the Interpleader Funds (defined below) and future distributions of Proceeds (defined below).

11. Admits the allegations contained in Paragraph 11 of the Complaint and respectfully refers the Court to the Indenture for the complete terms thereof.

12. Denies the allegations contained in Paragraph 12 of the Complaint and respectfully refers the Court to the Indenture for the complete terms thereof, except denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 12.

13. Admits the allegations contained in Paragraph 13 of the Complaint.

14. Denies the allegations contained in Paragraph 14 of the Complaint, except admits that by notice dated November 7, 2007 (the "November 7 Notice"), the Trustee purported to notify the recipients that, among other things, an Event of Default had occurred under Section 5.1(h) of the Indenture and that, pursuant to Article 5 of the Indenture, Holders of Notes may be entitled to direct Wells Fargo to take particular actions with respect to the Collateral Debt Securities and the Notes during the occurrence and continuance of the Event of Default, and affirmatively avers that no such Event of Default occurred as of November 7, 2007.

15. Admits the allegations contained in Paragraph 15 of the Complaint, except denies that an Event of Default had occurred as set forth in the November 7 Notice.

16. Denies the allegations contained in Paragraph 16 of the Complaint, except admits that Magnetar Financial LLC, the investment advisor for Magnetar, informed the Trustee on behalf of Magnetar, that it objected to the Trustee's determination that an Event of Default had occurred under Section 5.1(h) of the Indenture as of November 7, 2007, as such determination is contrary to the express terms of the Indenture, and further admits that Magnetar owns 46,761 Preference Shares in addition to Class C-1 Notes in the principal amount of $5 million.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint, except admits that by notice dated December 6, 2007 (the "December 6 Notice") to the Trustee and the Co-Issuers, CALYON,

among other things, allegedly pursuant to its asserted rights under Section 5.2 of the Indenture, purported to declare the principal of and accrued and unpaid interest on all of the Notes (including the commitment fee payable to CALYON on the Class A-1A Notes) to be immediately due and payable, and affirmatively avers that CALYON's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

18.     Denies the allegations contained in Paragraph 18 of the Complaint, except admits that in the December 6 Notice, CALYON purported to instruct the Trustee not to distribute any Interest Proceeds (defined below) and Principal Proceeds (defined below) to any Subordinate Interests, as that term is defined in Section 13.1(b) of the Indenture, until all such Interest Proceeds and Principal Proceeds were first paid to amounts allegedly due CALYON as Holder of Class A-1A Notes, and affirmatively avers that CALYON's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

19.     Denies the allegations contained in Paragraph 19 of the Complaint, except admits that in the December 6 Notice, allegedly in accordance with Section 13.1(b), CALYON purported to instruct the Trustee, among other things, that before any distribution to Subordinate Interests were made, all Interest Proceeds and Principal Proceeds must first be directed to the payment of the amounts described in Section 11.1(i)(A) through the first sub-clause of (F) of the Indenture, and affirmatively avers that CALYON's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

20.     Denies the allegations contained in Paragraph 20 of the Complaint, except admits that in the December 6 Notice, allegedly in accordance with Section 13.1(b), CALYON

purported to instruct the Trustee, among other things, that after payment of the amounts set forth in Section 11.1(i)(A) through the first subclause of (F) of the Indenture, all remaining Interest Proceeds and Principal Proceeds were to be applied to the payment of principal of Class A-1A Notes until the funded Aggregate Outstanding Amount of the Class A-1A Notes had been reduced to zero, and then, were to be deposited into the Reserve Account established under the Indenture until the Remaining Unfunded Class A-1A Commitment Amount had been reduced to zero, which deposit would result in a reduction of certain of CALYON's obligations to make advances as a Holder of Class A-1-A Notes, and affirmatively avers that CALYON's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

21. Denies the allegations contained in Paragraph 21 of the Complaint, except admits that in the December 6 Notice, CALYON purported to instruct the Trustee that after payment of the items described in Paragraphs 19 and 20 of the Complaint, and the deposit into the Reserve Account as described in Paragraph 20 of the Complaint, the Trustee should apply Interest Proceeds and Principal Proceeds to pay interest and principal on all Subordinate Interests, purportedly as contemplated under Section 13.1(b) of the Indenture, and affirmatively avers that CALYON's interpretation of the Indenture reflected in the December 6 Notice is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, except avers that CALYON's interpretation of Sections 11.1 and 13.1 of the Indenture is neither reasonable nor correct, and respectfully refers the Court to the Indenture for the complete terms thereof.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24. Denies the allegations contained in Paragraph 24 of the Complaint, except admits that a dispute exists among the defendants as to the proper distribution of all Interest Proceeds and Principal Proceeds.

25. Denies the allegations contained in Paragraph 25 of the Complaint, except admits that certain of the defendants have asserted conflicting claims to all or a portion of the Interpleader Funds and future distributions of Proceeds arising from, among other things and without limitation: (a) whether an Event of Default under Section 5.1(h) of the Indenture occurred as of November 7, 2007 and (b) the meaning of certain provisions of the Indenture, including, without limitation, Sections 1.1(a), 5.1(h), 11.1(i) and (ii) and 13.1.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, except admits the allegations contained in the second and third sentences of Paragraph 26 of the Complaint.

27. Admits the allegations contained in Paragraph 27 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third sentence of Paragraph 27 of the Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, except, upon information and belief, admits that the Trustee has filed a bond with this Court in the amount of $9,761,422.56.

29. Denies the allegations contained in Paragraph 29 of the Complaint, except admits that a dispute over entitlement to Interest Proceeds and Principal Proceeds is likely to recur on succeeding Distribution Dates.

30. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the allegations contained in Paragraph 30 of the Complaint.

31. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the allegations contained in Paragraph 31 of the Complaint.

### AFFIRMATIVE CLAIM TO MAGNETAR'S SHARE OF THE INTERPLEADER FUNDS AND FUTURE DISTRIBUTIONS

By way of affirmative claim to its share of the funds held by the Trustee representing undistributed collections of Interest Proceeds and Principal Proceeds (the "Interpleader Funds") and funds that may be distributed on any subsequent Distribution Date, and in further response to the Complaint in this Action, Magnetar alleges as follows:

32. Magnetar repeats and realleges each and every admission and denial hereinabove set forth in paragraphs "1" through "31" hereof as if each of these admissions and denials were more fully set forth at length hereat.

### PARTIES

33. Upon information and belief, non-party Orion 2006-2 Ltd. (the "Issuer"), is an exempted company with limited liability that was incorporated in October 2006 under the laws of the Cayman Islands. At all times relevant, the Issuer owned all membership interests in non-party Orion 2006-2 LLC (the "Co-Issuer"), which is a limited liability company that was organized in October 2006 under the laws of the State of Delaware. The Issuer and the Co-Issuer (collectively, the "Co-Issuers") and Wells Fargo Bank, N.A. are parties to the Indenture.

34. Wells Fargo Bank, N.A. is the Trustee under the Indenture. Upon information and belief, Plaintiff Wells Fargo Bank, N.A. is a national banking association with its principal office in the State of South Dakota.

35. In addition to being the Trustee under the Indenture, Wells Fargo Bank, N.A. is also the Preference Share Paying Agent for the Preference Shares and is party to the Preference Share Paying Agency Agreement, dated as of December 7, 2006, pursuant to which the Preference Share Paying Agent is to distribute to the Preference Shareholders the net Interest Proceeds and Principal Proceeds received from the Trustee in accordance with the Priority of Payments, and Magnetar refers the Court to the Preference Share Paying Agency Agreement for the complete terms thereof.

36. Interpleader Defendant Magnetar is a corporation organized under the laws of the Cayman Islands, where it maintains its principal place of business. Magnetar's affairs and operations, including all investment decisions, are managed by Magnetar Financial LLC, an investment advisor registered with the United States Securities and Exchange Commission under the Investment Advisor Act of 1940. Magnetar owns Class C-1 Notes in the principal amount of $5 million and 46,761 Preference Shares.

37. Upon information and belief, Interpleader Defendant CALYON is a French banking corporation with its principal place of business in Paris, France. CALYON is the Credit Default Swap Counterparty under the Indenture and the Holder of a Majority of Class A-1A Notes issued under the Indenture. Additionally, upon information and belief, CALYON Corporate and Investment Bank was the marketing name of CALYON at the time the Indenture was executed, and, together with CALYON Securities (USA), Inc., a New York corporation, which is an affiliate of CALYON, was the Initial Purchaser of the Securities (defined below) and, upon information and belief, assisted in the marketing of the Securities, including the preparation and dissemination of the Offering Memorandum dated December 7, 2006, through which various Notes issued under the Indenture were offered for sale.

38.     Upon information and belief, Interpleader Defendant Cede & Co. ("Cede") is the nominee name of The Depository Trust Company ("DTC"), a limited purpose company organized under the New York banking laws, with its principal place of business in New York, New York. Cede is the registered Holder of record of the Securities on deposit with the DTC, representing 100% of the aggregate principal amount of the outstanding Notes (defined below) and certain of the Preference Shares (defined below).

39.     Interpleader Defendants Does 1 through Does 100 are unknown Holders of beneficial interests of Securities.

**THE PRIORITY OF PAYMENTS**

40.     On or about December 7, 2006, in accordance with the terms of the Indenture, the Co-Issuers issued twelve (12) classes of promissory notes (the "Notes"), including without limitation, Class A-1A Senior Secured Floating Rate Variables Funding Notes due 2051 (the "Class A-1A Notes") and Class C-1 Secured Deferrable Floating Rate Notes due 2051 (the "Class C-1 Notes"), and in accordance with its Memorandum and Articles of Association, the Issuer issued 74,000 preference shares (the "Preference Shares", and with the Notes, collectively, the "Securities").

41.     Under the terms of the Indenture, the Issuer granted to the Trustee a security interest in Collateral for the benefit of certain parties (the "Secured Parties"), including, without limitation, the holders of the Notes (the "Noteholders").

42.     Pursuant to the Indenture, the Collateral is intended to secure the payment of all sums payable under the Indenture. The Indenture provides that all amounts to be paid under the Indenture on behalf of Preference Shares are to be released from the lien granted under the Indenture and paid to the Preference Share Paying Agent for distribution to the Preference

Shareholders. All amounts to be paid under the Indenture on behalf of the Noteholders of a particular Class are to be paid pari passu based upon the outstanding principal amount of Notes of such Class and on behalf of the Preference Shareholders pari passu based upon the number of Preference Shares outstanding.

43.   Under the Indenture, interest and principal proceeds are to be collected by the Trustee from the Collateral (the "Interest Proceeds" and "Principal Proceeds" and collectively, the "Proceeds") and are to be maintained in separate accounts until a date each month (each, a "Distribution Date") when the Trustee, on behalf of the Issuer, and in accordance with the terms of the Indenture, is to pay such Interest Proceeds and Principal Proceeds, to the extent of available funds, to, among others, (i) certain counterparties whose interests are senior to those of the Noteholders (the "Senior Parties"); (ii) the Noteholders; and (iii) the Preference Share Paying Agent for distribution to holders of Preference Shares (the "Preference Shareholders").

44.   Payment of Proceeds is to be made on each Distribution Date in the order, timing and amounts set forth in Sections 11.1(i) and (ii) of the Indenture (the "Priority of Payments") to the extent of available funds. The Priority of Payments contains a payment waterfall for distribution of Interest Proceeds in Section 11.1(i) (the "Interest Waterfall") and a payment waterfall for the distribution of Principal Proceeds in Section 11.1(ii) (the "Principal Waterfall"). The Interest Waterfall and the Principal Waterfall contain different payment priorities from one another. Interest Proceeds and Principal Proceeds are not to be commingled under the Priority of Payments.

45.   The Priority of Payments are subject to Section 13.1 of the Indenture which reaffirms the priority scheme of Section 11.1(i) and (ii) . Each of the Subsections of Section 13.1 concerns the priority of the Senior Parties or of the Notes in relation to one another. Subsections 13.1(b) through (m) each concern a particular class of Note (the "Identified Class"), and each

Subsection defines as "Subordinate Interests" those Notes that are junior in priority to the Identified Class. Each of Subsections 13.1(b) to (m) expressly provides that upon the occurrence and continuation of an Event of Default, and acceleration of the Notes pursuant to Article 5 of the Indenture, the Notes in the Identified Class are to be paid in full in accordance with the Priority of Payments.

**THE CLASS A-1A NOTES**

46.   In accordance with the Indenture and the Class A-1A Note Purchase Agreement dated December 7, 2006 (the "A-1A Agreement"), pursuant to which CALYON purchased the Class A-1A Notes, the Class A-1A Notes were unfunded at the time of issuance, but are subject to borrowing by the Issuer up to the amount of $900 million, for use by the Issuer in satisfying certain obligations due the Credit Default Swap Counterparty. Upon information and belief, as of the date hereof, there have been no borrowings under the Class A-1A Notes and the aggregate principal balance of the Class A-1A Notes remains at zero.

47.   CALYON's obligation to fund any borrowing under the Class A-1A Notes is reduced by amounts on deposit in a segregated securities account established by the Trustee, and held in its name, for the benefit of the Secured Parties (the "Reserve Account").

48.   Subject to the terms of the Indenture and the A-1A Agreement, CALYON is entitled to interest on any outstanding principal amount under the Class A-1A Notes and to a fee (the "Commitment Fee") on the undrawn amount of principal, which Commitment Fee is pari passu with the interest payable on the Class A-1A Notes.

49.   So long as any of the Class A-1A Notes are outstanding, the Class A-1A Noteholder is the Controlling Class under the Indenture.

50. Pursuant to Sections 5.5(a)(ii) and 5.13 of the Indenture, if an Event of Default occurs and is continuing, the Trustee must retain the Collateral intact unless the Holders of at least 66-2/3% of the Controlling Class (the "66-2/3 Holder") direct that the Collateral be sold. Upon information and belief, CALYON is the 66-2/3 Holder and thus, has the power to direct the liquidation of the Collateral, but CALYON has not directed the Trustee to liquidate the Collateral as of the date hereof.

**THE DISPUTE**

51. Pursuant to the November 7 Notice, the Trustee purported to notify the recipients that, among other things, an Event of Default had occurred under Section 5.1(h) of the Indenture on November 6, 2007.

52. CALYON, as Holder of a majority of the Class A-1A Notes, by the December 6 Notice to the Trustee and the Co-Issuers, allegedly in accordance with Section 5.2(a)(ii)(A) of the Indenture, and on the basis that the Event of Default identified by the Trustee in the November 7 Notice was continuing, purported to:

    (a)    declare the principal of, and accrued and unpaid interest on, the Notes (including the Commitment Fee on the Class A-1A Notes), to be immediately due and payable;

    (b)    terminate the Reinvestment Period; and

    (c)    instruct the Trustee to remit all Proceeds in a manner contrary to the Priority of Payments and advantageous to CALYON, but to the prejudice of all other Noteholders and Preference Shareholders.

53. Specifically, in the December 6 Notice, citing to Section to 13.1(b) of the Indenture, CALYON purported to instruct that before distributing any Interest Proceeds or Principal Proceeds to any "Subordinate Interests," as that term is defined in Section 13.1(b) of

the Indenture, the Trustee must apply all Interest Proceeds and Principal Proceeds to pay amounts described in Sections 11.1(i)(A) through the first sub-clause (F) of the Indenture, including the Commitment Fee and interest payable to CALYON, then to pay the principal of the Class A-1A Notes until the funded aggregate outstanding amount of such Notes was paid in full, and thereafter, to deposit all Interest Proceeds and Principal Proceeds into the Reserve Account, until the Remaining Unfunded Class A-1A Commitment Amount had been reduced to zero.

54. The application of Proceeds demanded by CALYON is contrary to the Priority of Payments, and ignores the express requirement of Section 13.1(b), on which CALYON purportedly relied in its December 6 Notice, that the Class A-1A Notes shall be paid in accordance with the Priority of Payments after an Event of Default and acceleration of the Notes. As such, Section 13.1 reiterates the Priority of Payments, and payments to be made under Section 13.1 are to be made in compliance with Sections 11.1(i) and (ii).

55. Upon information and belief, based upon values of the Collateral, if the Trustee complied with CALYON's demand to deposit the Interest Proceeds and Principal Proceeds into the Reserve Account, thereby reducing CALYON's obligations under the A-1A Agreement, all available Proceeds would be exhausted, and there would not be any Proceeds available at any time thereafter to make any distributions of either Interest Proceeds or Principal Proceeds to any of the Noteholders or Preference Shareholders in accordance with Sections 11.1(i) and (ii) of the Indenture and, even if all Proceeds would not be so exhausted, if the Trustee complied with CALYON's demand in the December 6 Notice, Interpleader Funds that would otherwise be distributed to the Noteholders and the Preference Shareholders would be diverted to the Reserve Account for the benefit of CALYON, contrary to the Priority of Payments.

56. Magnetar, along with, upon information and belief, one or more other Noteholders or Preference Shareholders, advised the Trustee that the November 7 Notice and/or the December 6 Notice (collectively, the "Notices") were inconsistent with the Indenture.

57. In view of the conflicting positions of CALYON, and one or more Noteholders or Preference Shareholders, including Magnetar, the Trustee commenced the instant action and has withheld the distribution of Proceeds on and after the December 10, 2007 Distribution Date, pending a final resolution of this action. The Trustee has represented to the Defendants that the Interpleader Funds as of June 11, 2008 included only Interest Proceeds and that it would, pending a final resolution of this action, continue to set aside additional Interest Proceeds and any Principal Proceeds that are or may be distributable to one or more of the Defendants pursuant to the Indenture.

**THE NOTICES ARE INCONSISTENT WITH THE INDENTURE**

58. The positions taken in the Notices are inconsistent with the Indenture.

**An Event of Default Has Not Occurred and the December 6 Notice Was A Nullity**

59. Pursuant to the November 7 Notice, the Trustee purported to provide notice that an Event of Default under Section 5.1(h) of the Indenture had occurred because the ratio described in that Section (the "5.1(h) Ratio"), allegedly was less than 100%. Upon information and belief, such Event of Default was deemed to have occurred only because the 5.1(h) Ratio was miscalculated, by applying the so-called "Haircut Amount".

60. In fact, the Haircut Amount is not applicable to the calculation of the 5.1(h) Ratio.

61. Section 5.1(h) of the Indenture states that the Haircut Amount is only to be used in calculating the 5.1(h) Ratio "if applicable". However, the definition of Haircut Amount in

Section 1.1(a) of the Indenture expressly provides that the Haircut Amount is solely "applicable" in determining the "Net Outstanding Portfolio Collateral Balance", in connection with computation of a distinct ratio, the "AAA/Aaa Coverage Ratio". Accordingly, reliance on the Haircut Amount in determining the 5.1(h) Ratio was in error.

62.     Upon information and belief, had the Haircut Amount not been utilized in calculating the 5.1(h) Ratio with respect to the November 7 Notice, the 5.1(h) Ratio would have been in excess of 100%.

63.     Under the Indenture, promptly after the occurrence of a Default known to the Trustee, the Trustee is required to mail notice thereof to various entities, including all Noteholders and the Preference Share Paying Agent.

64.     Upon information and belief, other than the purported Event of Default described in the November 7 Notice, the Trustee has not given notice of any Event of Default under the Indenture.

65.     Except as set forth in the December 6 Notice, with respect to the alleged Event of Default described in the November 7 Notice, CALYON, as the Majority of the Controlling Class, has not purported to accelerate the Notes or to terminate the Reinvestment Period.

66.     By reason of the foregoing, no Event of Default occurred under Section 5.1(h) as of the date of the November 7 Notice, and CALYON's December 6 Notice, purporting to accelerate the Notes and to terminate the Reinvestment Period on the basis of the Event of Default described in the November 7 Notice was a nullity. Distribution of the Interpleader Funds and all additional Proceeds to be distributed on future Distribution Dates should proceed forthwith in accordance with the Priority of Payments.

**Section 13.1 Does Not Alter the Priority of Payments**

67.  Even if an Event of Default had occurred and was existing as of the November 7 Notice, and the Notes had been properly accelerated in accordance with the December 6 Notice, such that Section 13.1 would be applicable, under that Section, each Class of Notes is still to be paid in accordance with the Priority of Payments. As such, under Section 13.1, distribution to any Class of Notes is senior to distribution to be made to its "Subordinate Interests" only to the extent that such distribution is senior in priority pursuant to Sections 11.1(i) and (ii).

68.  Moreover, Section 13.1 does not provide, require or permit the commingling of Interest Proceeds and Principal Proceeds. Rather, under the Indenture, subject to the priorities set forth thereunder and the availability of funds, each Noteholder is entitled, absolutely and unconditionally, to the payment of Principal Proceeds and Interest Proceeds as the same become due.

69.  Further, Subsections 13.1(b) through (m) only concern payments due under the Notes in issue in each Subsection thereof, and not of other amounts.

70.  Section 13.1(b) concerns the Class A-1A Notes. Under the Class A-1A Notes, the Co-Issuers promised to pay to CALYON the principal amount outstanding under the Class A-1A Notes, up to the maximum amount of $900 million (to the extent drawn), and interest or the Commitment Fee thereupon.

71.  In the December 6 Notice, CALYON demanded that before distributing any Proceeds to Subordinate Interests within the meaning of Section 13.1(b), the Trustee deposit in the Reserve Account amounts sufficient to reduce the Remaining Unfunded Class A-1A Commitment Amount to zero. Deposits into the Reserve Account are not amounts that are due and payable under the Class A-1A Notes, and payments on account of the Class A-1A Notes do

not include deposits of all Proceeds into the Reserve Account, as CALYON demanded in the December 6 Notice.

### AS AND FOR MAGNETAR'S FIRST CLAIM TO THE INTERPLEADER FUNDS AND FUTURE DISTRIBUTIONS OF PROCEEDS

72. Magnetar repeats and re-alleges each and every allegation in Paragraphs 1 through 71 of the Amended Answer as if the same was repeated at length.

73. As both a C-1 Noteholder and a Preference Shareholder, Magnetar has a claim to the Interpleader Funds and to any Proceeds to be distributed hereafter.

74. Were it not for the incorrect calculation of the 5.1(h) Ratio and the resulting improper acceleration of the Notes and the termination of the Reinvestment Period, Magnetar, as a Class C-1 Noteholder and a Preference Shareholder, would have already received its share of the Interpleader Funds and would be entitled to receive future distributions of Proceeds, to the extent available, in accordance with the Priority of Payments.

75. Even if an Event of Default had occurred as of the November 7 Notice and the Notes were properly accelerated and the Reinvestment Period terminated pursuant to the December 6 Notice, Magnetar would still have been entitled to its share of distributions from the Interpleader Funds and all future Proceeds, to the extent available, in accordance with the Priority of Payments.

76. By reason of the foregoing, Magnetar has a claim to its *pari passu* share of the Interpleader Funds and all other Proceeds to be distributed hereafter, in accordance with the Priority of Payments as a C-1 Noteholder and Preference Shareholder, to the extent of its holdings.

## AS AND FOR MAGNETAR'S SECOND CLAIM TO THE INTERPLEADER FUNDS AND FUTURE DISTRIBUTIONS OF PROCEEDS (IN THE ALTERNATIVE)

77. Magnetar repeats and re-alleges each and every allegation in Paragraphs 1 through 75 of the Amended Answer as if the same was repeated at length.

78. Pursuant to the Indenture, as the 66-2/3 Holder, CALYON has the right to direct that the Collateral be sold, but it has not done so.

79. In view of its failure to direct the Sale of the Collateral, CALYON is estopped from asserting that the Trustee should distribute Proceeds in accordance with the December 6 Notice.

WHEREFORE, Interpleader Defendant Magnetar demands judgment:

A. Determining that no Event of Default had occurred at the time of the November 7 Notice, that the December 6 Notice was a nullity and that in any event, even if an Event of Default had occurred and the Notes had properly been accelerated and the Reinvestment Period terminated, distribution of the Interpleader Funds and all future distributions of Proceeds must be made in accordance with Sections 11.1(i) and (ii);

B. In its favor and against all adverse Interpleader Defendants and requiring the distribution of all Interpleader Funds and any other Proceeds to be distributed hereafter to Magnetar to the extent of its holdings;

C. Awarding to Magnetar its costs and attorneys' fees incurred in defending this action to the full extent allowed by law; and

D. Awarding to Magnetar such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 22, 2008

|  | OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.<br><br>By: _____<br>Peter Feldman (PF-3271)<br><br>230 Park Avenue<br>New York, New York 10169<br>(212) 661-9100<br>Email: pfeldman@oshr.com<br><br>*Attorneys for Interpleader Defendant Magnetar Constellation Master Fund, Ltd* |
|---|---|

1096862.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via this Court's Electronic Filing System, as well as via U.S. Mail, on the parties on the service list below on this 22nd day of August, 2008.

*Peter Feldman*

## SERVICE LIST

| | |
|---|---|
| Michael Edward Johnson, Esq.<br>Piret Loone, Esq.<br>c/o Alston & Bird, LLP<br>90 Park Avenue<br>New York, NY 10016<br>*Attorneys for Plaintiff Wells Fargo Bank, N.A.*<br><br>*Via ECF and U.S. Mail* | Scott E. Eckas, Esq.<br>Kevin J. Biron, Esq.<br>c/o McKee Nelson LLP<br>One Battery Park Plaza, 34th Floor<br>New York, NY 10004<br>*Attorneys for Defendant Calyon*<br><br>*Via ECF and U.S. Mail* |
| Eric P. Heichel, Esq.<br>Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C.<br>805 Third Avenue, 10th Floor<br>New York, NY 10022<br>*Attorneys for Cede & Co.*<br><br>*Via ECF and U.S. Mail* | |